Brian JONES, Petitioner–Appellee,

v.

John KEANE, Superintendent, Woodbourne Correctional Facility, Respondent–Appellant.

No. 02–2382.

United States Court of Appeals, Second Circuit.

Argued: Feb. 19, 2003.

Decided: May 13, 2003.

Amended: May 14, 2003.

relationship with an insufficiency-of-the-evidence claim he had raised on direct appeal. Since we conclude the claim was unexhausted, we reverse.

## I. BACKGROUND

Jones was convicted by a jury in County Court, Orange County, New York, of Murder in the Second Degree [1] and Criminal Possession of a Weapon in the Second [2] and Third Degrees [3] and sentenced in December 1996, as a juvenile, to concurrent sentences of nine years to life on the murder charge, two to six years on the second-degree weapons-possession charge, and one to three years on the third-degree weapons-possession charge. The conviction stemmed from a June 1996 altercation in the City of Newburgh, involving Jones, LaToya Williams (Jones's girlfriend), and Germaine Fields. While attempting to separate the two young men, Williams fell to the ground with Fields. Jones then fired two shots, killing Fields. At trial, Jones testified that he did not intend to kill Fields but, fearing that he was armed, was animated at least in part by concerns of self defense.

Jones was charged with one count of intentional murder under N.Y. Penal Law § 125.25(1), one count of depraved indifference murder under N.Y. Penal Law § 125.25(2), and criminal possession of a weapon in the second and third degrees. The jury acquitted Jones of intentional murder, but, as noted, convicted him of

Andrew R. Kass, Assistant District Attorney (Richard A. Brown, District Attorney of Queens County, John M. Castellano, Assistant District Attorney, of counsel and on the brief), for Francis D. Phillips, II, District Attorney of Orange County, Goshen, NY, for Respondent–Appellant.

Robert N. Isseks (Alex Smith, on the brief), Middletown, NY, for Petitioner–Appellee.

Before: OAKES, KEARSE, and B.D. PARKER, Circuit Judges.

B.D. PARKER, Jr., Circuit Judge.

Respondent-appellant John P. Keane, superintendent of the Woodbourne Correctional Facility, appeals the grant of Brian Jones's petition for a writ of habeas corpus by the United States District Court for the Southern District of New York (Brieant, J.). Jones claimed, and the court agreed, that the New York second-degree murder statute, under which he was convicted, was unconstitutionally vague. See N.Y. Penal Law § 125.25(2). Although he had not raised this argument in state-court proceedings, Jones argued that the claim was nonetheless exhausted because of its close

---

1. N.Y. Penal Law § 125.25(2), provides that a person is guilty of murder in the second degree when "[u]nder circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person."

2. To the extent pertinent here, under N.Y. Penal Law § 265.03, a person is guilty of criminal possession of a weapon in the second degree when he possesses a loaded firearm "with intent to use the same unlawfully against another."

3. To the extent pertinent here, under N.Y. Penal Law § 265.02, a person is guilty of criminal possession of a weapon in the third degree when he possesses a loaded firearm unless "such possession takes place in such person's home or place of business."

second-degree ("depraved indifference") murder and on the two weapons-possession counts.

On direct appeal, Jones argued that the evidence at trial was insufficient to establish his guilt on the second-degree murder charge and that, instead, the evidence showed that his actions were justified "due to a reasonable fear for his safety." This argument was rejected by the Appellate Division, which affirmed Jones's conviction. *People v. Jones*, 266 A.D.2d 236, 696 N.Y.S.2d 902 (2d Dep't 1999). Leave to appeal was denied by the New York Court of Appeals. *People v. Jones*, 95 N.Y.2d 798, 711 N.Y.S.2d 166, 733 N.E.2d 238 (2000). Jones then applied for writ of error *coram nobis*, asserting that he was denied effective assistance of appellate counsel. This application was denied. *People v. Jones*, 288 A.D.2d 237, 732 N.Y.S.2d 361 (2d Dep't 2001). Jones also moved in the County Court under N.Y.Crim. Proc. Law § 440.10 to vacate his conviction because of ineffective assistance of trial counsel. But this motion was also denied, as was leave to appeal it.

Jones then turned to federal court, filing a petition for a writ of habeas corpus. *See* 28 U.S.C. § 2254. In this petition, Jones asserted, as in state court, that the evidence was insufficient to support his murder conviction and that his trial and appellate counsel had provided ineffective representation. Jones also argued, however, that the crime of depraved indifference murder is unconstitutionally vague, owing to "confused and contradictory" efforts to interpret "depraved indifference" by the New York Court of Appeals. Hab. Pet. at 18. These efforts, Jones contended, have made depraved indifference murder indis-

tinguishable from the crime of reckless manslaughter. This elision, according to Jones, creates the potential for unconstitutional variances in the charges prosecutors can lodge and sentences that may be imposed for essentially the same conduct.[4]

More specifically, Jones argues that the New York Court of Appeals erred in concluding, beginning with *People v. Register*, 60 N.Y.2d 270, 469 N.Y.S.2d 599, 457 N.E.2d 704 (1983), that depraved indifference murder does not require "an 'uncommonly evil and morally perverse frame of mind,'" *People v. Sanchez*, 98 N.Y.2d 373, 383, 748 N.Y.S.2d 312, 777 N.E.2d 204 (2002) (quoting *id.* at 396, 748 N.Y.S.2d 312, 777 N.E.2d 204 (Rosenblatt, *J.*, dissenting)), and instead that "the crux" of this crime "is recklessness exaggerated by indifference to the circumstances objectively demonstrating the enormity of risk of death from the defendant's conduct." *Id.* at 380, 748 N.Y.S.2d 312, 777 N.E.2d 204. Jones contends that the depraved indifference murder statute is unconstitutional, as so interpreted, because it cannot be distinguished from reckless manslaughter, which occurs when a person "recklessly causes the death of another person." N.Y. Penal Law § 125.15(1).

The "failure of the [depraved indifference] statute to adequately define the more serious *mens rea*" creates the risk, according to Jones, "that prosecutors and juries [will] arbitrarily and erratically determine which crime to prosecute or to apply." Appellee Br. at 25 (citing, among other authorities, *Kolender v. Lawson*, 461 U.S. 352, 358, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983) ("Where the legislature fails to provide such minimal guidelines, a criminal statute may permit 'a standardless

---

4. Although reckless manslaughter carries a minimum punishment of only a year in prison, depraved indifference murder carries a minimum punishment of 15 years in prison.

*See* N.Y. Penal Law § 70.00(3)(a) and (b); *People v. Sanchez*, 98 N.Y.2d 373, 407, 748 N.Y.S.2d 312, 777 N.E.2d 204 (Rosenblatt, *J.*, dissenting).

sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections.'" (quoting *Smith v. Goguen*, 415 U.S. 566, 575, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974)))).[5] While conceding that this claim had not been specifically raised in state court, Jones asserted that his vagueness claim was nonetheless exhausted because it was "interrelated" with an insufficiency-of-the-evidence claim raised on direct appeal.

The District Court granted the petition. It first concluded that the depraved indifference murder and reckless manslaughter statutes were, on their face, neither vague nor indistinguishable. But it accepted Jones's argument that attempts by the New York Court of Appeals to interpret "depraved indifference" had resulted in "a largely circular definition worthy of the committee that wrote the Internal Revenue Code" and had effectively eviscerated any meaningful distinction between depraved indifference murder and reckless manslaughter. Mem. and Order, May 22, 2002, at 8. The District Court found that the conflation of conduct covered by the two closely related crimes violated equal protection and substantive due process. It further agreed with Jones that presenting his insufficiency-of-the-evidence claim in state court sufficed to exhaust his vagueness claim, finding the two "substantially the same." *Id.* at 11.

## II. DISCUSSION

■ We review *de novo* the District Court's grant of habeas corpus and we review its factual findings for clear error. *Jenkins v. Artuz*, 294 F.3d 284, 290 (2d Cir.2002). Although the parties raise a number of issues, we address principally the exhaustion issue since we conclude it is dispositive.

### A. Vagueness and Exhaustion

■ With exceptions not relevant here, federal habeas relief is not available unless "the applicant has exhausted the remedies available in the courts of the State."[6] 28 U.S.C. § 2254(b)(1)(A). The exhaustion requirement "springs primarily from considerations of comity" between the federal and state judicial systems. *Daye v. Att'y Gen. of N.Y.*, 696 F.2d 186, 191 (2d Cir. 1982) (en banc). By requiring exhaustion, federal courts recognize that state courts, "no less than federal courts, are bound to safeguard the federal rights of state criminal defendants." *Id.* Besides serving "to minimize friction between our federal and state systems of justice," *Duckworth v. Serrano*, 454 U.S. 1, 3, 102 S.Ct. 18, 70 L.Ed.2d 1 (1981) (per curiam), the exhaustion requirement has the salutary practical effect of enhancing the familiarity of state courts with federal constitutional issues. *See Rose v. Lundy*, 455 U.S. 509, 519, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982).

■ Exhaustion requires a petitioner fairly to present the federal claim in state court. *See Strogov v. Att'y Gen. of N.Y.*, 191 F.3d 188, 191 (2d Cir.1999). "A peti-

---

**5.** Jones's position is shared by some members of the New York Court of Appeals, who have dissented when that court has rejected similar vagueness challenges. *See, e.g., Register*, 60 N.Y.2d at 281–88, 469 N.Y.S.2d 599, 457 N.E.2d 704 (Jasen, *J.*, dissenting); *People v. Roe*, 74 N.Y.2d 20, 29–38, 544 N.Y.S.2d 297, 542 N.E.2d 610 (1989) (Bellacosa, *J.*, dissenting), *Sanchez*, 98 N.Y.2d at 407, 748 N.Y.S.2d 312, 777 N.E.2d 204 (Rosenblatt, *J.*, dissenting) ("[T]he *Register* Court's formulation has

the effect of treating defendants with the exact same mental culpability unequally by giving them vastly different sentences even though their moral culpability is identical.").

**6.** As modified by AEDPA, the federal habeas statute permits federal courts to *deny* unexhausted claims on the merits. *See* 28 U.S.C. § 2254(b)(2).

tioner has 'fairly presented' his claim only if he has 'informed the state court of both the factual and the legal premises of the claim he asserts in federal court.'" *Dorsey v. Kelly,* 112 F.3d 50, 52 (2d Cir.1997) (quoting *Daye,* 696 F.2d at 191). The claim presented to the state court, in other words, must be the "substantial equivalent" of the claim raised in the federal habeas petition. *Strogov,* 191 F.3d at 191 (quoting *Picard v. Connor,* 404 U.S. 270, 278, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971)).

■ As noted, the District Court found that the insufficiency of the evidence claim that Jones presented in state court was the substantial equivalent of the claim of unconstitutional vagueness raised in his federal habeas petition. The court also expressed concern that presentation of the vagueness claim in state court may well have been futile. As explained by the District Court:

Petitioner argues, and this Court agrees, that in the context of this case, raising in the state court the issue of insufficiency of the evidence was sufficient to raise ("inextricably intertwined with") a challenge to the statutory criteria for distinguishing reckless manslaughter from depraved indifference murder.

The requirement for exhaustion is not intended to exhaust the petitioner or his or her lawyers, but is designed to give the state courts the opportunity to address and correct violations of Constitutional rights. That purpose is fulfilled when the state court has a fair and meaningful chance to grant relief on what is substantially the same claim raised in federal court. *O'Sullivan v. Boerckel[,]* 526 U.S. 838[, 844, 119 S.Ct. 1728, 144 L.Ed.2d 1] (1999)[;] *Vasquez v. Hillery[,]* 474 U.S. 254, 257[, 106 S.Ct.

617, 88 L.Ed.2d 598] (1986). In the context of this case, if they won't listen to Judge Bellacosa and they won't listen to Judge Jasen, they won't listen to Brian Jones, and no purpose will be served in staying this case for further exhaustion of state remedies.[7]

Mem. and Order, May 22, 2002, at 11–12.

■ But the fact that the New York Court of Appeals may have been unlikely to grant Jones relief on his vagueness claim does not cure his failure to have raised it in state courts. It is well established that a petitioner may not bypass state courts merely because they may be unreceptive to the claim. *See Bousley v. United States,* 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) ("'[F]utility cannot constitute cause,'" for procedural default because of failure to raise claim on direct review, "'if it means simply that a claim was unacceptable to that particular court at that particular time.'") (quoting *Engle v. Isaac,* 456 U.S. 107, 130 n. 35, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982) (internal quotation marks in *Engle* omitted)); *Rosario v. United States,* 164 F.3d 729, 733 (2d Cir.1998).

We also conclude that the insufficiency-of-the-evidence claim Jones asserted on direct appeal was not substantially the same as his vagueness claim since the insufficiency claim did not alert the state court to a claim of statutory vagueness. In his insufficiency claim, Jones did not challenge the type of conduct that would constitute depraved indifference murder but argued that sufficient evidence had not been presented at trial. Indeed, Jones recited the elements of second-degree murder in his appeal, without indicating any concern that these elements were unconstitutionally vague:

---

**7.** The District Court's reference to New York Court of Appeals Judges Bellacosa and Jasen is to dissenting opinions authored by these Judges. *See supra* note 5.

In order to be found guilty of second degree murder [citation omitted] the People were required to prove that "under circumstances evincing a depraved indifference to human life" Appellant engaged in conduct which creates a grave risk of death and causes the death of another person. This simply was not proven.

Appellee Br. before N.Y.App. Div. at 9.

Sometimes, of course, issues of vagueness and of the sufficiency of the evidence may overlap. In *Strogov*, for example, a habeas petitioner, who had been convicted in state court of grand larceny for submitting fraudulent Medicaid billing claims, argued on appeal that the evidence presented at trial did not establish her criminal intent to violate the statute, because the Medicaid billing code was ambiguous. But even there, where claims of vagueness and insufficiency were explicitly linked, we held that reliance on a statute's ambiguity in support of an insufficiency of the evidence claim on appeal did not suffice to exhaust a constitutional vagueness claim raised in the habeas petition, because the petitioner had failed to present the state courts with " 'essentially the same legal doctrine' " asserted in the habeas petition. 191 F.3d at 192 (quoting *Daye*, 696 F.2d at 191–92).

In advancing his insufficiency claim in state court, Jones did not argue that New York's depraved indifference murder statute was unconstitutionally vague. Instead, he argued that the evidence demonstrated that he reasonably believed that Fields possessed a weapon and that he, fearing for his life, reacted in self defense. In other words, in the state courts, Jones pressed his claim of self defense; he presented neither the factual nor legal premises underpinning his subsequent claim that the statute itself was unconstitutionally vague. Accordingly, Jones failed to exhaust this claim. *See Strogov*, 191 F.3d at 193.

We also agree with respondent that Jones has procedurally defaulted his vagueness claim since New York's procedural rules now bar Jones from raising it in New York courts. Further direct review by the Court of Appeals is no longer available, *see* N.Y. Rules of Court, Court of Appeals, § 500.10(a) (authorizing only one request for review of conviction), and the failure to have raised the claim on direct review now forecloses further collateral review in state court. *See* N.Y.Crim. Proc. Law § 440.10(2)(c) (barring review if claim could have been raised on direct review). In the case of procedural default, we may reach the merits of the claim "only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent." *Bousley*, 523 U.S. at 622, 118 S.Ct. 1604 (internal quotations and citations omitted). Since Jones has not attempted to meet this standard, we do not reach the merits of his claim.

**B. Other Claims**

Jones also urges us to affirm the District Court's grant of habeas relief on alternative grounds: that the evidence was insufficient to establish his guilt, that his trial counsel was ineffective for failing to exhaust his peremptory challenges-so as to preserve his ability to appeal the trial court's denial of certain challenges for cause-and that his appellate counsel was ineffective for failing to raise this claim on appeal. We cannot consider these alternative grounds, however, because "a habeas petitioner to whom the writ has been granted on one or more grounds may not assert, in opposition to an appeal by the state, any ground that the district court has not adopted unless the petitioner obtains a certificate of appealability permitting him to argue that ground." *Grotto v.*

*Herbert,* 316 F.3d 198, 209 (2d Cir.2003). Jones has not received a certificate of appealability on any grounds not adopted by the District Court. Moreover, were we to treat his appellate brief as a request for such a certificate, we would deny the request because he has failed to make a substantial showing of the denial of a constitutional right. *See id.* at 209–10; 28 U.S.C. § 2253(c)(2).

CONCLUSION

For the foregoing reasons, the judgment of the District Court is reversed and Jones's petition is dismissed.

Michael GERBER, Howard Mayer and Barry W. Feldman, Plaintiffs,

Fred Kayne, Oppenheimer & Co., a Delaware Corporation, as custodian for Fred Kayne Individual Retirement Accounts, Stephen Kayne, Don Wohl, Milton T. Okun, Rosemary Okun, Glenn Tobias, Merrill, Lynch, Pierce, Fenner & Smith, Inc., a Delaware Corporation, as Custodian for Milton T. Okun Individual Retirement Accounts, Ken Berg, Robert A. Bronstein, Bronstein Family Trust, Bruce Burnam, Marcia Burnam, Kathleen A. Cohen, William Corbett, Cutler Family Trust of 1989, Martin Goldfarb, Richard Gunther, Harpel Partners, L.P., Harpel Wheelock Partners, L.P., Harpel International, Ltd., Richard L. Milsner, Joel Rumm, Victor Scaravilli and Tri S Partners and Todd Ellis, Joseph Meyer, Leona Moga, Terry Schultz, Eddy Sherman, Kenneth Steiner, Audree Yorkes, on behalf of themselves and all others similarly situated, Plaintiffs-Appellees,

v.

MTC ELECTRONIC TECHNOLOGIES CO., LTD., Defendant–Counter–Defendant–Appellant,

BDO Dunwoody Ward Mallette, Defendant–Third–Party–Plaintiff–Appellee,

Alan Leung, Defendant–Cross–Claimant,

HSBC Bank Canada and Ron Driol, Third Party–Defendants–Cross–Claimants–Appellees,

Miko Leung, H.J. Meyers & Co., Inc. and Sit Wa Leung, Defendants–Cross–Defendants,

v.

Daiwa Securities America, Inc., Defendant–Cross–Claimant–Appellant,

Robert C. Farr; Peter Jensen; Thomas Lenagh; Edilberto V. Pozon; Goodwin Wang; David Wong, Defendants–Counter–Defendants–Appellants,

Levesque Securities, INC., Meridian Securities International Limited, Maurice Lee, Canaccord Capital Corp., First Canada Securities, Leib Orlanski, Freshman, Marantz, Orlanski, Cooper & Klein, Harley Gleckman and Wall Street Financial Corp., Defendants.

No. 02–7023(LEAD), 02–7026(CON), 02–7083(CON), 02–7084(CON), 02–7143(CON), 02–7147(CON), 02–7215(CON).

United States Court of Appeals, Second Circuit.

Argued: Feb. 3, 2003.

Decided: May 15, 2003.

Lawrence H. Nagler, Nagler & Associates, Los Angeles, CA (David F. Berry, of counsel),for plaintiffs-appellees.

Gary P. Naftalis, Kramer Levin Naftalis & Frankel LLP, New York, N.Y. (Alan R. Friedman, Stephen M. Sinaiko, Jennifer L. Rochon, J. Wells Dixon, of counsel, Bruce S. Kaplan, Friedman Kaplan Seiler & Adelman LLP, New York, NY, on the brief), for defendant-cross-claimant-appellant Daiwa Securities America, Inc.

Thomas I. Sheridan, III, Torys LLP, New York, NY, for defendant-counter-defendant-appellant MTC Electronic Technologies Co.

Gregory A. Markel, Cadwalader, Wickersham & Taft LLP, New York, N.Y. (Paul R. Bessette, Austin, TX, on the brief), for defendant-third-party-plaintiff-appellee BDO Dunwoody.

Before: JACOBS, POOLER and SOTOMAYOR, Circuit Judges.

SOTOMAYOR, Circuit Judge.

Defendant-cross-claimant-appellant Daiwa Securities America, Inc. ("Daiwa"), defendants-counter-defendants-appellants MTC Electronic Technologies Co., Ltd. ("MTC") and Robert C. Farr, Peter Jensen, Thomas Lenagh, Edilberto V. Pozon, Goodwin Wang, and David Wong (collectively "the individual defendants") appeal from a judgment of the United States District Court for the Eastern District of New York (John Gleeson, *District Judge*) approving partial settlements between plaintiffs-appellees and defendants-appellees BDO Dunwoody ("BDO"), and HSBC Bank Canada ("HSBC") and Ron Driol, an HSBC executive.

Appellants (collectively "the non-settling defendants") contend that the district court erred in approving the partial settle-

ments without ensuring that their settlement judgment credit would be at least the total amount paid by the settling defendants and by deferring determination of the exact amount of the credit until trial. They also take issue with the district court's approval of a settlement bar order extinguishing any claims against BDO relating to or arising from the allegations of this litigation. According to the non-settling defendants, any bar order should be narrowed to include only indemnity and contribution claims, and should also impose a reciprocal bar on claims by BDO. Alternatively, the non-settling defendants argue that at least with respect to the settlement of the claims of those plaintiffs added by amendment to the complaint after the effective date of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Pub.L. No. 104–67, 109 Stat. 737 (1995) (codified as amended in scattered sections of 15 U.S.C.), the bar order must be mutual.

We affirm the district court's orders in part. We hold that the court's deferral of the allocation of particular settlement amounts to various elements of damages for purposes of calculation of the non-settling defendants' judgment credit was not erroneous, and conclude that, in light of the concessions made by plaintiffs on appeal, the non-settling defendants will receive a credit that is at least the settlement amount for common damages. We also affirm, with a slight modification, the district court's bar order extinguishing the claims of the non-settling defendants for indemnity and contribution, and any other claims where the damage to the non-settling party is measured by its liability to the plaintiffs for claims relating to this action. We vacate and remand that part of the district court's order relating to the mutuality of the bar order because we find that the magistrate judge, whose recommended ruling the district court adopted,

did not fully consider the competing equities involved in the mutual and non-mutual rules. Finally, we agree with the district court that the PSLRA does not apply to any of the added plaintiffs in this action, which was commenced prior to that statute's effective date.

## BACKGROUND

### I. The Litigation

MTC was a company based in British Columbia that purportedly had binding joint ventures regarding the operation, manufacture and sale of telecommunications equipment in China. Plaintiffs are a group of investors who purchased shares of MTC common stock between 1992 and 1994. MTC allegedly raised over $70 million in a secondary offering in 1993, which was underwritten by defendant Daiwa. Defendant BDO Dunwoody ("BDO") was MTC's auditor during the time period at issue. Plaintiffs allege that MTC's purported telecommunications joint ventures were fraudulent and materially misrepresented. As a result, plaintiffs claim to have incurred trading losses in MTC stock of more than $15 million.

Nine of the named plaintiffs filed suit against MTC, its principals (Miko Leung and Sit Wa Leung), various MTC officers and directors (the individual defendants), Daiwa and BDO in the Central District of California on January 23, 1995, alleging securities fraud, RICO violations and state law claims of fraud, negligent misrepresentation, and breach of fiduciary duty ("the *Kayne* action"). Because plaintiffs' allegations were similar to those of two class actions then pending against MTC in the Eastern District of New York, the *Kayne* action was transferred to Judge Gleeson by the Judicial Panel on Multidistrict Litigation for coordinated pre-trial proceedings. Plaintiffs moved to amend their

complaint to add seventeen additional plaintiffs in April 1996, and two more in March 1997. The individual defendants and BDO filed third-party claims against HSBC and Ron Driol, an HSBC officer, alleging that they assisted in the misappropriation of MTC stock by the Leungs. Plaintiffs then sought leave to add HSBC and Driol as defendants. That motion was denied, and the plaintiffs filed a state court action in California asserting federal RICO and state common law fraud claims against HSBC and Driol. These claims were consolidated with a California state court action that had previously been filed by the seventeen plaintiffs who were added to the federal action in April 1996, and both state court actions were stayed pending the outcome of the proceedings before Judge Gleeson. The two original MTC class actions settled; this action remains pending in the Eastern District of New York before Judge Gleeson.

## II. The Settlements

In late 2000, plaintiffs reached an $8 million settlement with BDO purporting to allocate $4,907,975.50 to out-of-pocket damages and $3,092,024.50 to pre-judgment interest. Plaintiffs also reached a $4,075,000 settlement with HSBC and Driol, allocating $1,300,000 to out-of-pocket damages, $819,000 to prejudgment interest, and $1,956,000 to attorneys' fees (which are recoverable under RICO). In exchange, plaintiffs agreed to release BDO, HSBC and Driol for all claims they might have against the settling defendants in any forum, related in any way to the MTC litigation.

These settlements were submitted to the district court for approval, and were referred to Magistrate Judge Chrein for a recommended ruling. The settling parties sought an order finding that the settlements were good faith settlements under California and federal law, barring claims by the non-settling defendants while preserving the claims of the settling defendants, dismissing the claims pending in the Eastern District of New York, and approving the allocation of damages while leaving the determination of any judgment credit for the non-settling defendants until after trial. Although plaintiffs had made settlement contingent on the district court's adoption of their specific allocations, they subsequently agreed to finalize the settlements if the propriety of the allocations within the settlement figure was left to the trial judge.

## III. Rulings Below

In a recommended ruling, Magistrate Judge Chrein held that a "capped proportionate share" rule would determine the amount of the judgment credit to which the non-settling defendants are entitled on the state and federal claims. Under such a rule, the credit is the *greater* of the settlement amount for common damages or the settling defendants' share of liability as proven at trial. The magistrate judge observed that this "rule ensures that no matter how the settlement funds are distributed as between damages and other elements, the non-settling defendants will never be required to pay more than their proportionate share of an award as determined by the trier of fact."

The magistrate judge also rejected the non-settling defendants' argument that the PSLRA applied to the claims of the nineteen plaintiffs who joined the suit by amendment after the statute's effective date. The magistrate judge found that the PSLRA did not apply to those plaintiffs because the *Kayne* action was "commenced" on the date they filed the original complaint, not the date the plaintiffs were added.

Finally, the magistrate judge held that a bar order extinguishing "any claims arising out of or reasonably flowing from the claims and allegations in the Kayne Action" was proper because the non-settling defendants would be adequately protected by the judgment credit. With respect to whether the bar order should also bar the settling defendants from asserting contribution or indemnity claims against the non-settling defendants, the magistrate judge noted that a district court in this Circuit had previously held that settling defendants should be allowed to seek contribution from non-settling defendants to achieve equitable apportionment of damages among defendants. *See In re Del–Val Fin. Corp. Sec. Litig.*, 868 F.Supp. 547, 563–64 (S.D.N.Y.1994). While expressing concern that "[a] rule which allows settling defendants, who are buying 'peace of mind' and avoiding the costs and risks of litigation, to seek contribution from [the non-settling] defendants who bore the risk [of litigation] ... seems unfair," the magistrate judge stated that he "fe[lt] obliged to follow the only precedent in this Circuit especially given that the [non-settling defendants] were on the receiving end of this benefit in the [prior] class settlement." The magistrate judge then approved those portions of the bar orders preserving the settling defendants' claims against the non-settling defendants.

The parties filed objections and requests for clarification, which were considered by the district court. Judge Gleeson adopted the magistrate judge's recommendations in their entirety with one modification, holding that "if a judgment is obtained against a nonsettling defendant, the judgment reduction shall not necessarily be calculated by using the full amounts of the settlements. Rather, allocations of amounts within those gross figures (to damages,

prejudgment interest and attorneys' fees) shall be subject to the discretion of the trial court."

MTC, the individual defendants, and Daiwa have appealed. Plaintiffs have responded to the appeal on the question of the calculation of the judgment credit, the district court's deferral of that calculation, and the applicability of the PSLRA. BDO has responded on the issue of the scope and non-mutuality of the bar order and the applicability of the PSLRA.[1]

## DISCUSSION

### I. Standard of Review

■ "A court can endorse a settlement only if 'the compromise is fair, reasonable and adequate.' " *In re Masters Mates & Pilots Pension Plan & IRAP Litig.*, 957 F.2d 1020, 1026 (2d Cir.1992) (quoting *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir.1982)). This Court has also observed that "where the rights of one who is not a party to a settlement are at stake, the fairness of the settlement to the settling parties is not enough to earn the judicial stamp of approval." *Id.* Although the district court normally has discretion to approve a settlement, we may review the district court's decision *de novo* where an appellant's challenge to the authority of the district court to approve the settlement raises novel issues of law. *Id.*

### II. The Judgment Credit

■■ We begin by noting the first of several issues that are not in dispute in this appeal. No party challenges the magistrate judge's determination that the nonsettling defendants' judgment credit will be calculated using a "capped proportionate share" formula. Under this rule, the credit given for the settlements will be the

---

1. The individual defendants and Daiwa have   settled with HSBC and Driol.

greater of the settlement amount for common damages (a *"pro tanto"* rule) or the "proportionate share" of the settling defendants' fault as proven at trial. Although we do not hold that such a formula is required, we agree with the magistrate judge's conclusion that the cap, which ensures that a judgment credit is at *least* the amount of the settlement for common damages, complies with this Circuit's "one satisfaction" rule, which prohibits a plaintiff from recovering more than "one satisfaction for each injury." *Singer v. Olympia Brewing Co.*, 878 F.2d 596, 600 (2d Cir.1989); *see also Masters*, 957 F.2d at 1030 ("[W]here a settlement and a judgment compensate a plaintiff for the same injury, a nonsettling defendant is entitled to a judgment reduction at least in the amount of a prior settlement.").[2] By awarding a credit that is at least the settling defendants' proven share of liability, the non-settling defendants' rights are protected even without a determination of the

fairness of the settlement. *See id.* at 1029 ("Because the credit determination [under a proportionate fault method] is made after a determination of liability, the proportionate method is always consistent with fault.").

Despite the parties' agreement on the method of calculation of the credit, the non-settling defendants argue that the district court's orders create a possibility that they will receive less than the full amount of the settlement as a judgment credit, allegedly in violation of the one satisfaction rule. They also contend that they are entitled to know the amount of their credit, not merely the method of calculation, before trial. For the reasons that follow, we disagree.

The settling parties here attempted to allocate the settlements to three elements of "damages" purportedly suffered by the plaintiffs: out-of-pocket damages, prejudgment interest, and attorneys' fees.[3] On

**2.** In *Singer*, the plaintiff had sued two parties for related securities fraud and RICO claims in separate lawsuits in New York and Illinois. *Singer*, 878 F.2d at 598–99. The plaintiff prevailed against one party at trial on the securities claims, for a total damages award of approximately $3,000,000 including prejudgment interest; the RICO claim was dismissed before trial. *Id.* The plaintiff then settled with the other defendant for $1,250,000. *Id.* at 597. The district court credited the full amount of the settlement toward the judgment, and the plaintiff appealed, arguing that the settlement of the second action included settlement of the RICO claim, which might have exposed the defendant to treble damages. As a result, the plaintiff sought to offset the settlement against a hypothetical trebled damages award (using the actual damages awarded at trial), which would have resulted in the first defendant receiving no benefit from the set-off. *Id.* at 600. We rejected this argument, "declin[ing] to journey with [the plaintiff] down this road of speculation" because there had been no adjudication that anyone was liable to the plaintiff on the RICO claim:

Although ... the settling defendant may well have considered its possible exposure to treble damages in deciding to settle, it would be entirely speculative for us, absent a finding of liability on the RICO claim, to treble in the settled Illinois case the actual damages awarded in the tried New York case.

*Id.* at 601. Here, in contrast to *Singer*, plaintiffs are headed to trial against the non-settling defendants on the RICO and state law claims under which they seek attorneys' fees and prejudgment interest. Thus, whether there will be an award entitling plaintiffs to recover these elements of damages may not be speculative. For our purposes, *Singer* suggests that where a plaintiff loses on a claim at trial, the plaintiff cannot allocate a portion of the settlement to damages for that losing claim in order to reduce a non-settling defendant's judgment credit; instead, the judgment credit is to be the full amount of the settlement for common damages.

**3.** The references to "damages" as allocated in the settlements and the district court's orders are somewhat unclear. The entire settlement amount is a payment of "damages" by the

appeal, plaintiffs have conceded that in any of three possible scenarios, the judgment credit will be at least the full amount of the settlement for common damages. First, if plaintiffs prevail at trial on claims that entitle them to prejudgment interest (the state law claims, and, at the discretion of the trial court, the federal securities claims) or attorneys' fees (the RICO claims), they do not disagree that the non-settling defendants may use any amounts the district court allocates to these elements of damages to set off their liability on those elements respectively. Further, plaintiffs have also agreed that if the settlement money allocated to prejudgment interest exceeds the jury's award on this element, "any remaining portions can be used to offset out-of-pocket damages." Brief for Plaintiffs–Appellees at 12. (The plaintiffs presumably would concede the same with respect to the portion of the settlement allocated to attorneys' fees.) Finally, plaintiffs have acknowledged that they cannot allocate *any* of the settlement to attorneys' fees or prejudgment interest if plaintiffs do not prevail on claims entitling them to these types of damages:

> If ... it is determined [that] Plaintiffs are *not* entitled to prejudgment interest, *all portions of the settlements allocated to prejudgment interest could be used as an offset against any award of out-of-pocket damages.* The same holds true for the attorneys' fees portion of Plaintiffs' settlement with the Bank if Plaintiffs do not prevail at trial on their RICO claims against the Non-settling Defendants.

*Id.* (emphasis added). As plaintiffs have conceded that the judgment credit will be at least the full amount of the settlement, regardless of how these various elements of damages are allocated at trial, the non-settling defendants' fears that they will receive less than their full settlement credit or that the one satisfaction rule will be violated are unfounded.[4]

Despite these concessions, the non-settling defendants express concern that the district court held that "if a judgment is obtained against a nonsettling defendant, the judgment reduction shall not necessarily be calculated by using the full amounts of the settlements." The district court's order is accurate, however, insofar as only the portion of the settlement attributable to *common* damages will be credited. *See Masters,* 957 F.2d at 1031 ("Absent a showing that damages are not common, a nonsettling defendant whose rights against settling defendants are to be barred is entitled to judgment reduction at least in the amount paid by all settling parties."); *Singer,* 878 F.2d at 600 ("[W]hen a plaintiff receives a settlement from one defendant, a nonsettling defendant is entitled to a credit of the settlement amount against any judgment obtained by the plaintiff against the nonsettling defendant as long as both the settlement and judgment represent common damages.").

■ We also conclude that the non-settling defendants are not entitled to any greater degree of certainty about the amount of their judgment credit than they already have. Consistent with *In re Jiffy Lube Securities Litigation,* 927 F.2d 155, 157 (4th Cir.1991), relied upon by the non-

any particular way among the various elements of damages, we leave this issue, as well as the fairness of the allocations that the settling parties originally agreed upon, for the district court to consider after trial if necessary.