Emilia STROGOV, Petitioner–
Appellant,

v.

The ATTORNEY GENERAL OF the
STATE OF NEW YORK, by the Spe-
cial Prosecutor for Medicaid Fraud
Control, Respondent–Appellee.

No. 98–2382.

United States Court of Appeals,
Second Circuit.

Argued: Dec. 3, 1998.

Decided: Sept. 9, 1999.

Vivian Shevitz, Katonah, New York (Jane Simkin Smith, Katonah, New York, of counsel), for Petitioner–Appellant.

Arthur G. Weinstein, Special Assistant Attorney General, New York, New York (Dennis C. Vacco, Attorney General of the State of New York, Michael R. Berlowitz, Special Assistant Attorney General, New York, New York, of counsel), for Respondent–Appellee.

Before: VAN GRAAFEILAND, CARDAMONE, and CABRANES, Circuit Judges.

CARDAMONE, Circuit Judge:

Petitioner Emilia Strogov (petitioner or appellant) appeals from a judgment entered on April 15, 1998 in the United States District Court for the Eastern District of New York, before Judge Raymond J. Dearie, denying on the merits her petition for a writ of habeas corpus with respect to her State conviction for grand larceny in the second degree, arising from her submission of allegedly fraudulent Medicaid billing claims for podiatric orthotic appliances. Strogov's sole argument on this appeal is that her conviction should be vacated because the Medicaid billing code pursuant to which she submitted these claims failed to give her fair notice that it did not cover the claimed goods and services.

Petitioner insists that her State appellate briefs set out allegations that fairly put before the State courts her present contention that she was denied due process. Although there is some superficial similarity between her earlier arguments and her present ones, we conclude that these similar arguments were made in the service of distinct legal claims. Accordingly, we agree with the district court that Strogov has failed to exhaust her State judicial remedies for the claim she asserts in the federal habeas petition now before us. Because Strogov no longer has an opportunity to raise this claim in a State forum, and because she has not established any ground on which we may excuse her failure to exhaust her remedies, we affirm the denial of her petition.

## BACKGROUND

The New York State Medicaid Program (Program) makes medical care from participating health care providers available to financially needy persons. The health care providers may submit claims for reimbursement to the Program for the specific services provided. Between October 1984 and February 1988 appellant Emilia Strogov, a podiatrist participating in the Program, submitted pursuant to Medicaid billing code 90473 (Code 90473 or the Code) over 4,500 claims requesting reimbursement for orthotic appliances she furnished patients. During the years in question, Code 90473 read, "Foot mold, balance inlay support (casting and fabrication) per pair, to include all necessary fittings and adjustments," and claims submitted pursuant to this Code entitled participating physicians to reimbursement at the rate of $46 per pair of orthotic appliances.

On July 11, 1994 Strogov was convicted of grand larceny in the second degree, see N.Y. Penal Law § 155.40 (McKinney 1999), following a bench trial in New York State Supreme Court for Kings County. A person is guilty of grand larceny in the second degree when she steals property, the value of which exceeds $50,000. *Id.* The claims petitioner submitted to the Program were in excess of $200,000. Under New York law, a person may only be found to "steal[ ] property and commit[ ] larceny" when he takes property "with *intent* to deprive another of property or to appropriate the same to himself or a third person." *See* N.Y. Penal Law § 155.05 (emphasis added). At trial, the

prosecution offered proof (1) that Code 90473 requires *three-dimensional* casting of patients' feet—to permit customized fabrication of orthotic appliances conforming to the "architecture" of individual feet—and (2) that Strogov, nevertheless, consistently employed *two-dimensional* footprint and tracing techniques that only permitted the prescription of stock or prefabricated appliances. In Strogov's defense, her counsel attacked the prosecution's proof on the issue of intent. Counsel argued, among other things, that Code 90473 was ambiguous and thus did not give Strogov clear notice of the casting requirement. Relying on the asserted ambiguity of the Code, together with other evidence supposedly indicating Strogov's good faith, counsel maintained that the evidence was insufficient to support a finding of larcenous intent. Counsel further contended that his client had changed her practices in November 1987 after being notified by a professional publication of the casting requirement. Following conviction, Strogov was sentenced in New York to a prison term of one to three years and fined $256,984.

On June 12, 1995 petitioner's conviction was affirmed on her direct appeal to the Appellate Division of the New York State Supreme Court, which stated that the evidence of larcenous intent was sufficient to sustain the conviction and rejected Strogov's remaining contentions as "without merit." *People v. Strogov*, 216 A.D.2d 424, 425, 628 N.Y.S.2d 721 (2d Dep't 1995). The New York Court of Appeals affirmed. *See People v. McDonald*, 88 N.Y.2d 281, 644 N.Y.S.2d 670, 667 N.E.2d 320 (1996) (consolidated appeal). New York's highest court noted that the "expert evidence [indicates] that the term 'casting' has a universally recognized meaning within the podiatric profession: creating a three-dimensional cast or mold," and concluded that "code 90473 is not ambiguous and sufficiently conveyed to podiatrists the requirement to use a casting technique that will create a three-dimensional mold of the

foot." *Id.* at 287, 644 N.Y.S.2d 670, 667 N.E.2d 320.

The Court of Appeals went on to rule that there was sufficient proof of intent to sustain Strogov's conviction, reasoning that the unambiguous terms of Code 90473, together with plainly misleading billing instructions petitioner had given her intern, provided evidence of larcenous intent. *See id.* at 287–88, 644 N.Y.S.2d 670, 667 N.E.2d 320. It explained that Strogov had "instructed an intern to misrepresent the measuring techniques on each Medicaid patient chart as C–F–D, that is, cast, fabricate and dispense," despite the fact that Strogov actually ordered *pre-fabricated* stock items from tracings and footprints. *Id.* at 288, 644 N.Y.S.2d 670, 667 N.E.2d 320. Strogov's remaining contentions were rejected as "either unpreserved or without merit." *Id.* In short, the crime of larceny for which appellant stands convicted is defined by her wrongful intent to purloin money from the State Medicaid program for services that she did not provide.

On May 1, 1996 Strogov filed a petition in the Eastern District of New York for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254 (1994 & Supp. II 1996). In denying the petition by a memorandum and order dated March 31, 1998, Judge Dearie rejected Strogov's assertions that (1) the evidence of larcenous intent was insufficient to support the conviction, (2) her conviction was void by reason of allegedly perjured testimony given by a witness for the prosecution, and (3) her Sixth Amendment right to effective assistance of counsel was denied her due to her trial counsel's alleged conflict of interest. *See Strogov v. Attorney Gen.*, No. CV 96–2133, 1998 WL 229120, at *1–*5 (E.D.N.Y. Mar.31, 1998). Judgment denying the writ of habeas corpus was entered on April 15, 1998. This appeal followed.

## DISCUSSION

■ On appeal, we review *de novo* a district court's denial of a petition for a

writ of habeas corpus. *See Dorsey v. Kelly,* 112 F.3d 50, 52 (2d Cir.1997).

### I  Presentation of the "Fair Notice" Claim to the State Courts

On the merits of her appeal, Strogov argues that her conviction should be vacated because Code 90473 failed to give her fair notice, as required by the Fourteenth Amendment Due Process Clause, that her billing practices for the goods and services she furnished violated the law. *See United States v. Matthews,* 787 F.2d 38, 49 (2d Cir.1986) ("When a person of ordinary intelligence has not received fair notice that his contemplated conduct is forbidden, prosecution for such conduct deprives him of due process."). Specifically, she asserts that Code 90473 failed to give her fair notice of the requirement that podiatric orthotic appliances had to be prepared from three-dimensional casts of patients' feet in order to qualify for reimbursement under the Code. The New York State Attorney General (Attorney General or respondent) contends, among other things, that appellant is barred from raising this argument in federal court on habeas review collateral to her conviction because she failed to present it to the State courts on direct appeal from her conviction.

### A.  *The Exhaustion Requirement*

█ Supreme Court precedent requires that "a state prisoner must normally exhaust available state judicial remedies before a federal court will entertain his petition for habeas corpus." *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971) (citing *Ex parte Royall,* 117 U.S. 241, 6 S.Ct. 734, 29 L.Ed. 868 (1886)); *accord Dorsey,* 112 F.3d at 52; *Daye v. Attorney Gen.,* 696 F.2d 186, 191 (2d Cir.1982) (in banc). This requirement, which derives ultimately from notions of comity between the federal and State judicial systems, is also codified by statute at 28 U.S.C. § 2254(b) and (c). *See Dorsey,* 112 F.3d at 52; *Daye,* 696 F.2d at 190–91. To satisfy the exhaustion requirement with respect to a particular legal claim, the petitioner must fairly present it to the State courts in order that our sister judicial system may have a fair opportunity to consider the claim and correct any asserted constitutional defect in petitioner's conviction before recourse is sought in the federal courts. *See Picard,* 404 U.S. at 275–76, 92 S.Ct. 509; *Dorsey,* 112 F.3d at 52.

█ A federal constitutional claim has not been fairly presented to the State courts unless the petitioner has informed those courts of "all of the essential factual allegations" and "essentially the same legal doctrine he asserts in his federal petition." *Daye,* 696 F.2d at 191–92 (citing, *inter alia, Picard,* 404 U.S. at 276–77, 92 S.Ct. 509). In other words, the claims presented by the petitioner to the State appellate courts must be the "substantial equivalent" of the claims he raises in the federal habeas petition. *Picard,* 404 U.S. at 278, 92 S.Ct. 509. In this context, a petitioner's presentation of the federal constitutional claim may assume any one of a number of permissible forms:

> [T]he ways in which a state defendant may fairly present to the state courts the constitutional nature of his claim, even without citing chapter and verse of the Constitution, include (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

*Daye,* 696 F.2d at 194.

### B.  *Reliance on Factual Allegations in State Appellate Briefs*

█ Strogov contends that her "fair notice" claim was fairly presented to the New York State courts in satisfaction of the exhaustion requirement. She refers to a number of passages from the district

court record that reproduce submissions made to the Appellate Division and the Court of Appeals. In particular, petitioner maintains that her prior claims of insufficient evidence and of ineffective assistance of counsel rested on a factual basis that was alleged in her State appellate briefs with a legal "thrust" that lay sufficiently "within the mainstream of constitutional litigation," for purposes of fairly presenting her "fair notice" claim to the State courts. *Daye*, 696 F.2d at 194, 197 (applying fourth criterion by analyzing factual basis in light of petitioner's assertion of "basic doctrine" on judicial bias in his State appellate brief).

In evaluating appellant's argument, we begin with the referenced passages she cites. Most of these passages pertain to her insistence that the evidence of larcenous intent was insufficient to support the conviction because (1) the witnesses differed as to whether Code 90473 required three-dimensional casting, thus suggesting an ambiguity in the Code's meaning in the podiatric community, and (2) Strogov's other conduct showed that she had been acting out of an honest, good-faith belief that her conduct was permissible. Another passage pertains to appellant's claim of ineffective assistance of counsel based in part on her trial counsel's failure to cite *People v. Rubin*, 101 A.D.2d 71, 474 N.Y.S.2d 348 (4th Dep't 1984) (discussing the casting requirement). Because *Rubin* supposedly held—according to the referenced passage—that a predecessor to Code 90473 did not require three-dimensional casting, Strogov contended that the case "raises issues of fair 'notice', as well as issues of . . . whether the Code provided a fair basis to impose criminal liability."

Turning first to Strogov's sufficiency of the evidence claim, it is apparent that she relied on the Code's purported ambiguity only in the service of a broader argument that the prosecutor had not adequately proven that she acted with the requisite level of criminal intent. It must be conceded that in the course of arguing that the ambiguity functioned to undermine any evidence of larcenous intent, Strogov stated that the Code failed to provide "fair notice." Despite the linguistic similarity between the "fair notice" aspect of her State court sufficiency claim, on the one hand, and the "fair notice" due process claim she presses in her federal habeas petition, on the other, these claims are otherwise distinct and cannot be said to be the "substantial equivalent" of one another. *See Picard*, 404 U.S. at 278, 92 S.Ct. 509. In order to demonstrate that she exhausted State court remedies, Strogov would need to show, as she has not done, that she presented the State courts with "essentially the same legal doctrine [s]he asserts in h[er] federal petition." *Daye*, 696 F.2d at 191–92 (citing *Picard*, 404 U.S. at 276–77, 92 S.Ct. 509).

The ineffective assistance of counsel claim that Strogov pressed before the State courts similarly failed to present those courts with an opportunity to consider the "fair notice" due process argument she makes in the present action. Although appellant's State appellate brief asserted that *Rubin* implicated questions of fair notice as a basis to impose criminal liability, the logical conclusion to be reasonably drawn from these phrases, when viewed in context, is not that Strogov intended to raise an independent fair notice claim, but rather that she thought her trial counsel was ineffective for failing to cite *Rubin* in rebuttal to the prosecution's proof of intent.

We pause to observe that a different problem would be presented were this a case in which the petitioner had presented a State claim of insufficient evidence to the State courts and then raised a functionally equivalent federal constitutional claim of insufficient evidence on her habeas petition. *See Evans v. Court of Common Pleas*, 959 F.2d 1227, 1231–33 (3d Cir.1992) (citing *Daye* with approval and finding exhaustion in such a case); *Nadworny v. Fair*, 872 F.2d 1093, 1097–1100 (1st Cir. 1989) (same).

Nor is this a case in which the petitioner contends she was prevented from exhausting a claim in the State courts because of ineffective assistance of appellate counsel. *See Carpenter v. Mohr*, 163 F.3d 938, 945–46 (6th Cir.1998) (recognizing such a claim). Rather, here petitioner presented claims of insufficient evidence and ineffective assistance on direct appeal in the State courts and only later attempted to raise a legally distinct fair notice claim in her federal habeas application. In such a case, our precedents hold that petitioner has not adequately presented her fair notice claim to the State courts.

The passages identified by Strogov did not effectively present her fair notice claim to the State courts, and we find no other passages in her State court briefs fairly presenting such a claim. In fact, other than the passages highlighted by appellant, the most relevant passage was a citation to *People v. Donaldson*, which addressed (and rejected) a similar fair notice claim with respect to Code 90473. 181 A.D.2d 948, 949, 582 N.Y.S.2d 288 (3d Dep't 1992). In some contexts, such "reliance on state cases employing constitutional analysis in like fact situations" will in fact effectively present the federal constitutional claim to the State courts. *Daye*, 696 F.2d at 194. Here, however, *Donaldson* was cited to the Court of Appeals only in a footnote to a section of Strogov's brief complaining, on State law grounds, that the prosecution had erred in failing to release the prior testimony of a key prosecution witness. This passing reference to *Donaldson* in a completely unrelated context cannot be said, in any realistic sense, to have adequately presented her fair notice claim to the Court of Appeals. Thus, appellant has failed to exhaust her State judicial remedies with respect to her fair notice claim.

## II Procedural Default

Finding a failure to exhaust State judicial remedies does not end our inquiry, since independent procedural consider-ations may bar a petitioner from returning to State court to pursue such remedies. In the present case, Strogov is precluded from seeking further direct review by the Court of Appeals, *see* N.Y. Rules of Court, Court of Appeals, § 500.10(a) (McKinney 1999) ("Only one application is available."), and her failure to raise her fair notice claim on direct review also forecloses her from seeking collateral relief from the New York courts, *see* N.Y.Crim. Proc. Law § 440.10(2)(c) (McKinney 1994). This provision requires State courts to deny motions for collateral relief where, *inter alia*, the State courts have not considered the claim on direct review "owing to the defendant's ... unjustifiable failure to raise such ground or issue upon [his or her direct] appeal." N.Y.Crim. Proc. Law § 440.10(2)(c). Strogov has urged in the instant appeal that she actually raised her "fair notice" due process claim in the State courts—an argument we reject above. She does not, however, argue in the alternative that any failure to raise the claim could be justified. As a consequence, because she failed to raise her claim in State court and no longer may do so, Strogov's claim is procedurally barred.

■ In a case of procedural default in State court, the Supreme Court has explained, a federal court may reach the merits of the habeas petition only if the petitioner can demonstrate both cause and prejudice—cause for the default and prejudice arising from imposing the bar of a default. *See Sawyer v. Whitley*, 505 U.S. 333, 338, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992); *Murray v. Carrier*, 477 U.S. 478, 485–88, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *Wainwright v. Sykes*, 433 U.S. 72, 87–91, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). A further exception exists where the petitioner can show that the denial of habeas relief would leave unremedied a "fundamental miscarriage of justice," in the sense that because of a constitutional violation a person who is actually innocent has been convicted and incarcerated. *See Murray*, 477 U.S. at 495–96, 106 S.Ct.

194

2639. Appellant makes no showing that her petition falls within these exceptions; we therefore decline to reach the merits of Strogov's petition. *See generally Washington v. James,* 996 F.2d 1442, 1447 (2d Cir.1993) (addressing procedural default); *Grey v. Hoke,* 933 F.2d 117, 120–21 (2d Cir.1991) (same).

## CONCLUSION

Accordingly, for the reasons stated, the district court's denial of Strogov's petition for a writ of habeas corpus is affirmed.