**John MOORE, Petitioner,**

v.

**State of NEW YORK (Erie County), Respondent.**

No. 02–CV–6071.

United States District Court, W.D. New York.

March 29, 2005.

John Moore, Dannemora, NY, pro se.

Paul J. Williams, III, Esq., Erie County District Attorney's Office, Buffalo, NY, for Respondent.

## DECISION AND ORDER

BIANCHINI, United States Magistrate Judge.

## INTRODUCTION

John Moore ("Moore") filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction in Erie County Court. The parties have consented to disposition of this matter by the undersigned pursuant to 28 U.S.C. § 636(b).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Moore was indicted by an Erie County Grand Jury on two counts of Murder in the First Degree; three counts of Murder in the Second Degree; two counts of Attempted Murder in the Second Degree; two counts of Burglary in the First Degree; one count of Robbery in the First Degree; four counts of Robbery in the First Degree (an armed felony); two counts of Robbery in the Second Degree; one count of Assault in the Second Degree; one count of Reckless Endangerment in the First Degree; and one count of Criminal Possession of a Weapon in the Second Degree.

Moore was tried jointly with co-defendant Lawrence MacKinnon ("MacKinnon") before a jury in Erie County Court (DiTullio, J.) on January 7, 1997, to January 25, 1997. The proof at trial revealed that on March 20, 1996, Moore and MacKinnon, both armed with handguns, broke into the upstairs apartment at 362 Johnson Street in the City of Buffalo. T.81–83, 318–20, 465–67, 698–701.[1] Four friends, LaMar

Young ("Young"), Orlando Holtz ("Holtz"), Rudolph Robinson ("Robinson"), and Antwane Washington ("Washington"), had gathered at the apartment that evening to smoke marijuana and watch basketball on television. T.78–80. Young, Holtz, Robinson and Washington had known both Moore and MacKinnon from the neighborhood for at least two years. T.83–85.

After kicking in the door of the apartment, Moore told the group to "run [their] pockets" (*i.e.*, hand over their money) and demanded, "Who killed [our] man Jamie[?]" *E.g.*, T.87–88. Moore presumably was referring to Jamie Fair ("Fair"), who, prior to his death, had lived at the same address as Moore on Grey Street. T.551–54. The main suspect in Fair's slaying was Emon Lewis ("Lewis"), an acquaintance of those present in the apartment. T.554–55. Lewis had been present at the apartment prior to Moore's arrival but had left to drop off Young's brother at his girlfriend's house. T.80.

When Lewis returned to the Johnson Street apartment that night, MacKinnnon pushed him into the kitchen and remained at the doorway with his gun in his hand. *E.g.*, T.90–91. Moore already was in the kitchen at that time. T.90–91. Three or four gunshot blasts were heard from the kitchen, and then Lawrence started firing shots at the group in the living room, grazing Holtz's shoulders and nearly striking Young in the chest. *E.g.*, T.92–93. The group in the living room "played dead" for a couple of minutes until MacKinnon and Moore left, and they then got up and called the police. T.93–94.

Lewis was found in the kitchen, still alive but unresponsive. *E.g.*, T.94. Young called 911 and told the operator that a shooting had occurred and that the assailants were named "Frankie" and "Law-

---

1. Citations to "T.___" refer to the trial transcript.

rence." T.94–96. When the police arrived at the scene, Young again implicated "Frankie" and "Lawrence" and stated that they lived on Grey Street. T.106. Each member of the group gave a detailed description of the assailants' clothing and physical characteristics. T.108, 334, 336, 476–77, 712–14. Young informed the police that Frankie's real name was John Moore. T.111.

Moore raised an alibi defense, claiming that on the evening of March 19, 1996, about twenty-four hours before the murder, he left Buffalo and headed for Atlantic City with his mother and his cousin. According to Moore, he remained there for several months. However, at the time Moore and his family allegedly were en route to New Jersey, his mother in fact was working her shift at Bally's Casino in Atlantic City. T.1038–39.

The People withdrew the eighth and fourteenth counts of the indictment, and the jury returned a verdict convicting Moore of all charges except one count of Murder in the Second Degree. On March 5, 1997, Moore was sentenced to concurrent sentences on all counts, the longest of which was life without parole for the first degree murder charge.

Moore appealed his conviction to the Appellate Division, Fourth Department, raising the following grounds for review: (1) cumulative trial error; (2) improper cross-examination of alibi witness; (3) erroneous introduction of the 911 emergency tapes; (4) erroneous refusal to allow a witness to model a shirt worn at the time of the incident for jury; (5) testimony improperly read aloud from a document not in evidence; (6) improper preclusion of a witness' statement; (7) improper introduction of photographs without proper foundation; (8) pre-trial identification procedures were impermissibly suggestive; and (9) harsh and excessive sentence. The court

unanimously affirmed the judgment against Moore on December 30, 1999. *People v. Moore,* 267 A.D.2d 969, 700 N.Y.S.2d 905 (4th Dep't 1999). The New York Court of Appeals denied leave to appeal on November 17, 2000. *People v. Moore,* 95 N.Y.2d 936, 721 N.Y.S.2d 613, 744 N.E.2d 149 (2000). Moore made no further motions for post-conviction relief.

On January 15, 2002, Moore filed a petition for a writ of habeas corpus in this Court, raising the following grounds for relief: (1) "inadmissible testimony by detective and officers involving identification"; (2) "no challenge to ineffective assistance of trial counsel, where counsel did not object to District Attorney's systematic exclusion of blacks from jury"; (3) "[a]ppellate counsel erroneously argued the identification[,] citing cases that were frivolous and no good to case at hand"; and (4) "[a]ppellate counsel[']s use of meritless and frivolous issues and neglecting [*sic* ] obvious constitutional violations." Petition at 5–6 (Docket # 1). For the reasons set forth below, the petition is denied.

## DISCUSSION

### I. Exhaustion

The law is clear that a petitioner must exhaust all available state remedies either on direct appeal or through a collateral attack of his conviction before he may seek a writ of habeas corpus in federal court. 28 U.S.C. § 2254(b); *Bossett v. Walker,* 41 F.3d 825, 828 (2d Cir.1994), *cert. denied,* 514 U.S. 1054, 115 S.Ct. 1436, 131 L.Ed.2d 316 (1995). The exhaustion of state remedies requirement means that the petitioner must have presented his constitutional claim to the highest state court from which a decision can be obtained. *See Morgan v. Bennett,* 204 F.3d 360, 369 (2d Cir.2000) (citing *Grey v. Hoke,* 933 F.2d 117, 119 (2d Cir.1991)). A claim

is properly exhausted when the state court is fairly apprised of the claim's federal nature and of the factual and legal premises underlying the claim. *Grey*, 933 F.2d at 119–20.

■ A habeas petitioner has a number of ways to fairly present a claim in state court without citing "chapter and verse" of the Constitution, including "(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." *Daye v. Attorney Gen'l of N.Y.*, 696 F.2d 186, 194 (2d Cir. 1982) (*en banc*); *accord, e.g., Strogov v. Attorney Gen'l*, 191 F.3d 188, 191 (2d Cir. 1999).

Respondent argues that all four of Moore's habeas claims are unexhausted. As to Moore's first claim of evidentiary error, respondent points out that in the petition, Moore did not identify the allegedly inadmissible testimony, nor did he describe with any degree of particularity the substance of the testimony at issue. In his response to respondent's answer, Moore asserted that the

> record the [*sic*] shows that these detective's [*sic*] (Morales, Sperazz and Ortiz) [*sic*] as a whole was inadmissible and a constitutional violation. The law states that testimony by detective's [*sic*] about complainant's or witnesses['] identification of defendant's photo, together with his denomination of the photo as an arrest photo is inadmissible testimony. Such testimony by detective's [*sic*] or officers investigating or that investigated the case is a constitutional violation. And testimony by an officer (Martinez) about identification from another case to

establish identification in the case at hand is a constitutional violation and should have been inadmissible testimony.

Petitioner's Response at ¶ 7 (Docket # 11). A review of the papers submitted on behalf of Moore in state court reveals that this argument was not raised on direct appeal. In fact, Moore concedes that none of his habeas claims have been presented to the relevant state courts for review. *See* Petition at ¶ 13 (Docket # 1) ("All grounds [were not presented], because I didn't know how to present them and previous counsel I had never informed me or communicated with me about how to present these issues to the courts.").

■ "For exhaustion purposes, 'a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred.'" *Grey v. Hoke*, 933 F.2d at 120 (quoting *Harris v. Reed*, 489 U.S. 255, 263 n. 9, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989)). Moore has already used the one direct appeal to the New York Court of Appeals to which he is entitled. *See* N.Y. Court Rules § 500.10(a). Although Moore could raise the evidentiary claim in a collateral motion to vacate the judgment pursuant to New York Criminal Procedure Law ("N.Y.Crim. Proc.Law") § 440.10, such a motion would be futile. Section 440.10(2)(c) of New York's Criminal Procedure Law mandates that the state court deny any 440.10 motion where the defendant unjustifiably failed to argue the constitutional violation on direct appeal despite a sufficient record. *See, e.g., Levine v. Commissioner of Corr. Services*, 44 F.3d 121, 126 (2d Cir.1995) (refusing to conduct federal habeas review where New York's appellate court found claim to be procedurally barred under N.Y.Crim. Proc. Law § 440.10(2)(c)).

Here, all facts relevant to determining Moore's evidentiary claim were contained in the trial record, and the claim could have been raised on direct appeal. Moore therefore is deemed to have exhausted his state remedies for the evidentiary claim by his procedural default on that issue. This result will provide little comfort to Moore, however, for when a petitioner has "failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred," the federal habeas court also must deem the claims procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

A procedural default will "bar federal habeas review of the federal claim, unless the habeas petitioner can show 'cause' for the default and 'prejudice attributable thereto,' or demonstrate that failure to consider the federal claim will result in a 'fundamental miscarriage of justice.'" *Harris v. Reed*, 489 U.S. at 262, 109 S.Ct. 1038 (quoting *Murray v. Carrier*, 477 U.S. 478, 485, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)). The "miscarriage of justice" exception extends to "extraordinary" cases of "actual innocence," that is, when the "constitutional violation probably has resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. at 496, 106 S.Ct. 2678; *see also Schlup v. Delo*, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).

Moore argues that this Court should excuse his procedural default because his appellate counsel failed to raise the claim on direct appeal, and that Moore was, and is, a *pro se* litigant and unschooled in the law. Petition at 6 (Docket # 1). The Second Circuit has held, however, that ignorance does not constitute "good cause" to excuse procedural default in these kinds of circumstances. *See Washington v. James*, 996 F.2d 1442, 1447 (2d Cir.1993) ("Ignorance or inadvertence will not constitute 'cause.'"); *accord Santiago Gonzalez v. United States*, 198 F.Supp.2d 550, 554 (S.D.N.Y.2002) (*pro se* status and ignorance of the law do not constitute cause); *Coronado v. Walker*, 1997 WL 600461, at *1–2 (S.D.N.Y. Sept. 26, 1997) (habeas corpus petitioner's *pro se* status, and his ignorance of the law at the time, did not constitute cause for his failure to raise his claim earlier); *Neff v. United States*, 971 F.Supp. 771, 774 (E.D.N.Y.1997) ("An appellant's ignorance of the law does not satisfy the cause and prejudice requirements necessary to excuse appellant's failure to seek relief on direct appeal."). Moore does not urge any other basis for cause, nor is any apparent from the record. Because Moore has failed to establish the requisite cause, the Court need not consider the existence of prejudice. *See Fernandez v. Leonardo*, 931 F.2d 214, 217 (2d Cir.), *cert. denied*, 502 U.S. 883, 112 S.Ct. 236, 116 L.Ed.2d 192 (1991) (determination that petitioner lacked cause for default eliminates need to determine prejudice).

In any event, Moore's evidentiary claim, as stated, is vague and does not appear to present a violation of state law, much less federal constitutional law. Moore has not succeeded in demonstrating that the challenged trial testimony amounted to error which worked to his actual and substantial disadvantage at trial. Thus, no prejudice has inured to Moore as a result of his procedural default of this claim.

The remaining three claims in Moore's petition, which consist of complaints regarding his appellate counsel's performance, similarly were not presented to the state courts. As respondent points out, Moore apparently concedes that he

had not exhausted these claims. *See* Petition at ¶ 13 (Docket # 1). Unlike his evidentiary claim, which is procedurally barred, Moore's ineffective assistance of appellate counsel claims remain unexhausted since Moore could present them to the Appellate Division by means of an application for a writ of error *coram nobis,* which is the proper vehicle in New York for defendants challenging the performance of their attorneys on appeal.

Under 28 § 2254(b)(2), district courts now have the discretion to deny claims "on the merits, notwithstanding the failure ... to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). Although the Second Circuit has yet to articulate a standard for determining when unexhausted claims should be denied on the merits, the majority of district court decisions in this Circuit have embraced a "patently frivolous" test for dismissing unexhausted claims. *Naranjo v. Filion,* 2003 WL 1900867, at *8 (S.D.N.Y. Apr. 16, 2003) (collecting cases) (footnote omitted). A minority of courts in this Circuit have phrased the test as whether it is "perfectly clear" that the petitioner does not raise "even a colorable Federal claim." *Id.* (collecting cases). After reviewing Moore's claims of appellate attorney error, I conclude that they fail either the "patently frivolous" or the "nonmeritorious" test. Therefore, I shall proceed to consider the remainder of his habeas petition.

## II. Merits of the Petition

### A. Applicable Law

In order to prevail on a claim of ineffective assistance of counsel within the framework established by the Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) *("Strickland ")*, a habeas petitioner must satisfy a two-part test. First, he

must show that his attorney's performance "fell below an objective standard of reasonableness," *id.* at 688, 104 S.Ct. 2052, and second, he must show that there is a "reasonable probability" that but for counsel's error, the outcome would have been different, *id.* at 694, 104 S.Ct. 2052. The issue of prejudice need not be addressed, however, if a petitioner is unable to demonstrate first that his counsel's performance was inadequate. "[T]here is no reason for a court deciding an ineffective assistance claim to ... address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697, 104 S.Ct. 2052.

■■■■■ Although the *Strickland* test was formulated in the context of evaluating the effectiveness of trial counsel, the same standard applies to claims regarding the performance of appellate counsel. *Mayo v. Henderson,* 13 F.3d 528, 533 (2d Cir. 1994) (citing, *e.g., Claudio v. Scully,* 982 F.2d 798, 803 (2d Cir.1992)). Appellate counsel need not present every non-frivolous argument that could be made on petitioner's behalf. *Mayo,* 13 F.3d at 533; *see also Evitts v. Lucey,* 469 U.S. 387, 394, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985) (emphasizing that appellate counsel "need not advance every argument, regardless of merit, urged by the appellant"). Moreover, reviewing courts should not employ hindsight to second-guess an appellate attorney's choices concerning strategy. *Mayo,* 13 F.3d at 533; *see also Jones v. Barnes,* 463 U.S. 745, 754, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983) ("For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the [ ] goal of vigorous and effective advocacy[.]"). Omission of insignificant claims that will likely be unsuccessful does not prejudice a defendant. *See Mayo,* 13 F.3d at 534 ("To

establish prejudice in the appellate context, a petitioner must demonstrate that 'there was a "reasonable probability" that [his] claim would have been successful ....'") (alteration in original) (quoting *Claudio v. Scully,* 982 F.2d at 803). However, a habeas petitioner may establish constitutionally inadequate performance if he shows that his appellate counsel omitted material and obvious issues while pursuing arguments that were patently and significantly weaker. *Mayo,* 13 F.3d at 533.

### B. Alleged grounds of attorney ineffectiveness

#### 1. Failure to argue trial counsel was ineffective for failing to object to jury composition

 With regard to his claim that appellate counsel should have argued trial counsel was ineffective "where counsel did not object to [the] District Attorney's systematic exclusion of blacks from [the] jury," Moore does not provide any indication as to the racial composition of the jury at his trial. Because he provides no factual basis on which the Court might evaluate his allegation of racial discrimination during juror selection, this claim is hopelessly vague and must be dismissed.

#### 2. Failure to properly argue identification issue

 Moore next argues that, when challenging the pre-trial identification procedure, appellate counsel "cit[ed] cases that were frivolous and no good to [the] case at hand." Moore asserts that appellate counsel's "use of cases not relevant to identification was erroneous and deprived appellant of effective appeal issue." Petition at 6 (Docket # 1). The Court has reviewed the brief submitted by appellate counsel on direct appeal and finds that the cases cited by counsel were on point. Appellate counsel properly cited *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), a seminal Supreme Court case regarding the admissibility of in-court identifications. Similarly, the New York state cases cited by appellate counsel were appropriate. Appellate counsel made the strongest argument he could make under the circumstances-that because Moore claimed an alibi defense, the police had a heightened obligation to vigilantly guard against suggestiveness in the photo array procedures, and that the procedures used were constitutionally inadequate and improperly bolstered the witnesses' identification of Moore. Simply because that argument was unsuccessful does not mean that appellate counsel's performance was deficient.

#### 3. Failure to pursue "obvious" constitutional issues on appeal

Lastly, Moore asserts that "counsel's use of meritless and frivolous issues and neglecting obvious constitutional violations" resulted in the denial of effective representation. Moore claims that counsel "constantly used issues that were obviously weak and would not benefit appellate [*sic*] and most had no constitutional merit." Petition at 6 (Docket # 1). In his appellate brief, counsel raised a number of salient legal issues and advocated in a cogent manner on behalf of his client. Although appellate counsel did not prevail on any of the claims raised, his tactical decision to press these issues on appeal falls well within the wide range of acceptable, reasonable professional conduct. *See Jameson v. Coughlin,* 22 F.3d 427, 428 (2d Cir.) (rejecting habeas petitioner's argument that his appellate counsel was constitutionally ineffective for raising three meritless arguments), *cert. denied,* 513 U.S. 888, 115 S.Ct. 232, 130 L.Ed.2d 156 (1994); *Tsirizotakis v. LeFevre,* 736 F.2d 57, 65 (2d Cir.) (holding that a court should not

"second-guess reasonable professional judgments by appellate attorneys as to what are the most promising issues for appellate review") (citations and internal quotation marks omitted), *cert. denied,* 469 U.S. 869, 105 S.Ct. 216, 83 L.Ed.2d 146 (1984). Moore's conclusory assertions simply do not support a finding that appellate counsel's performance was deficient.

■ Particularly problematic to any ineffective assistance of counsel claim is the failure to elaborate as to what counsel should have done differently and show prejudice as a result of the failure to raise substantial, meritorious claims. *See Claudio v. Scully,* 982 F.2d at 803 (To establish prejudice in the appellate context, a petitioner must demonstrate that "there was a 'reasonable probability' that [his] claim would have been successful before the [state's highest court].") (footnote omitted). Moore has not pointed to any potentially meritorious claim that appellate counsel overlooked. Thus, not only is Moore unable to demonstrate that appellate counsel provided deficient representation, he cannot show any prejudice as a result of counsel's performance. Moore's vague and unsubstantiated claims of ineffective assistance of appellate counsel are insufficient to justify habeas relief.

## CONCLUSION

For the reasons stated above, John Moore's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because Moore has failed to make a substantial showing of a denial of a constitutional right, I decline to issue a certificate of appealability. *See* 28 U.S.C. § 2253.

**IT IS SO ORDERED.**